*In the Matter of the Petition of* H. M. BEARDSLEY *for a Writ of Habeas Corpus.*

1. HABEAS CORPUS—*Witness, Discharged, When.* A witness giving his deposition who is imprisoned on the mittimus of a notary public for failing to produce papers in his possession, will be discharged on *habeas corpus* when it clearly appears that the papers and testimony sought to be produced are incompetent and inadmissible.

2. ——— *Query.* Whether a notary public in Kansas who is taking a deposition to be used in a case pending in the state court of Missouri, upon a notice, has authority to commit a witness for refusing to produce papers under a *subpœna duces tecum*—*quœre.*

*Original Proceedings in Habeas Corpus.*

PETITION for a writ of *habeas corpus,* filed in this court October 24, 1887. The opinion herein was filed at the December, 1887, session of the court.

*Geo. W. McCrary,* and *A. A. Harris,* for petitioner.

*Ritter & Skidmore,* and *Anderson & Tracewell,* for respondent.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding in *habeas corpus.* H. M. Beardsley obtained a writ from this court upon the representation that he was unlawfully restrained of his liberty by W. H. Layne, the sheriff of Cherokee county, upon a mittimus issued by Ira Heaton, a notary public of the same county. The mittimus was issued for an alleged contempt in not producing four letters which Beardsley had in his possession while giving his deposition before the notary. The deposition was being taken in a case pending in the circuit court of Jackson county, Missouri, wherein the Bank of Columbus was plaintiff, and John N. Ritter and L. L. Doubleday, partners as Ritter & Doubleday, were defendants. The action was based on the breach of a contract made between the parties whereby the bank sold all its property and assets to Ritter & Doubleday, and under the terms of which the parties bound themselves, each in the sum of $5,000, for the faithful performance of the contract. S. L. Conklin, the president of the bank, signed the contract, and principally conducted the negotiations; but after the contract had been made, and before it had been reduced to writing, he was compelled to be absent, and he called in R. R. Conklin to complete the contract, which was done on September 1, 1887. Subsequent to that time, R. R. Conklin wrote the letters in question to S. L. Conklin, and which came to the hands of H. M. Beardsley as the attorney of the bank.

Several reasons are urged why the petitioner should be

discharged, among which are the incompetency of testimony, and also the want of power in the notary public to compel the production of the letters.   It is clear that the letters were inadmissible as testimony in the action.   They were but the declarations of an agent after his agency had terminated. The extent of the agency was to close up the contract upon which the action was brought.   What was said or done by him after that time cannot bind the bank.   A declaration made while acting for the bank, respecting the contract, and explanatory of his acts, might be treated as so far a part of the *res gestæ* as to be admissible, but what was subsequently said or written by R. R. Conklin was mere hearsay.   If he has knowledge of material facts, his testimony can be taken, but his unsworn assertions relating to the contract, after his agency ceased, are not testimony.   Before his declarations can be held binding upon the bank, it must appear that he was acting, within the scope of his agency, and that the statements made in the subsequent letters formed a part of the *res gestæ*. (*Greer v. Higgins*, 8 Kas. 522; *Donnel v. Clark*, 12 id. 154; 2 Wharton on Ev., § 1173; *Packet Co. v. Clough*, 20 Wall. 540.)   R. R. Conklin resides within the jurisdiction of the court trying the cause, and therefore may be called as a witness, and required to state under oath all the facts connected with the transaction; and this is true of the petitioner.   We cannot allow the petitioner to remain imprisoned for failing to produce letters which the court would not receive in testimony, and the production of which the notary had no right to require.

On the other point it is urged that if the letters had been competent evidence the notary had no authority to compel their production.   The testimony when taken, as we have seen, was for use in the circuit court of Missouri.   The depositions were taken by the notary under a general notice, and not upon a commission from that court.   It seems that the laws of Missouri provide that if parties desire the testimony of a witness residing out of the state, they must sue out of the court in which the suit is pending a commission to take

his deposition. The only exception to this rule that we have observed is, that a deposition may be taken by an outside officer who has been appointed by authority of the laws of Missouri to take depositions without a commission. The notary here had no appointment under the laws of Missouri, and it is contended that no provision has been made by the legislature of Kansas for officers of this state to take depositions to be used in another jurisdiction, as has been done in many other states, and also by congress. It is therefore said that the notary had no authority from any source to compel the attendance of witnesses or the production of papers. On the part of the respondent it is said that the notary acquires jurisdiction from the notice, and that he has the inherent power by virtue of his office and under principles of comity, to do what has been done. But the competency of the witness and the admissibility of his statements, or of papers produced by him, are questions which must ultimately be controlled by the laws of Missouri and by the Missouri court. If it is granted that the notary had the authority to act, and it is derived from the laws of Missouri, it would seem that no more authority could be exercised by him in Kansas than can be done by a notary in Missouri; and it is expressly held in that state that a notary public has no power to commit a witness for refusing to produce books and papers under a *subpœna duces tecum*. (*Ex parte Mallinkrodt*, 20 Mo. 493.) However, we need not and will not now determine that question, but will rest our decision on the incompetency of the testimony sought to be produced. The prisoner will be discharged.

All the Justices concurring.