Ex parte Canada.

## Ex Parte ARCH W. CANADA.

Springfield Court of Appeals, December 10, 1910.

1. DEPOSITIONS: Taking Defendant's Deposition: Jurisdiction of Justice When Subpoena was Served Before Notice. One of the defendants refused to testify in the taking of his deposition before a justice of the peace, and was committed to jail for contempt. In a habeas corpus proceeding he contended that the justice had no jurisdiction to take his deposition for the reason that the subpoena was served upon him before the notice to take the deposition was served. Held, that even if this objection be well taken in a case where there was only one defendant, it was not tenable here because there were three other defendants served with notice before the subpoena was issued, and as to such defendants the justice was authorized to take his deposition.

2. ———: ———: Bankruptcy. Where proceedings were commenced in the Federal court to have one of the defendants in a suit pending in the circuit court declared a bankrupt this did not stay the proceeding in the state court as to the other defendants; neither would it deprive the plaintiff in the case in the circuit court of the right to take the deposition of the defendant about to be declared a bankrupt, where said deposition is to be used in a case pending against the other defendants.

3. ———: ———: Deposition for Wrongful Purpose. One of the parties defendant refused to testify at all in the taking of his deposition before a justice of the peace, to be used in a case pending in the circuit court, and he was committed for contempt. In a habeas corpus proceeding the contention was made

that the effort to obtain his deposition was not made in good faith, but to obtain evidence to be used against him in a bankruptcy proceeding. *Held*, that a witness might be justified in not answering questions where the person taking the deposition seeks to perpetrate a wrong or abuse the process of the court, but that question is not before the appellate court in this case where the witness refused to testify at all.

4. ————: **Taking at Time and Place of Notice: Officer Not Authorized to Take at Other Time.** Where the notice for taking depositions was limited to the hours from eight a. m. to six p. m., the officer taking the same was without authority to take the deposition at eleven p. m.

5. **COMMITMENT: Contempt.** A commitment for contempt which does not set forth in detail the acts constituting the alleged contempt is fatally defective.

6. ————: ————: **Depositions: Witness Refusing to Testify.** A party defendant was duly subpoenaed as a witness at the taking of depositions before a justice of the peace, and upon his failure to attend he was brought in by an attachment. Upon being sworn as a witness he refused to testify, whereupon a commitment was issued by the justice of the peace, and he was sent to jail. The taking of the depositions was continued from day to day, and each day the witness was given an opportunity to testify and upon refusal was remanded to the custody of the constable. In a habeas corpus proceeding the commitment was *held*, defective, but *held further*, that it was not necessary that any commitment be issued, as it was the order of the justice that gave the authority to the constable to hold the witness in custody until he testified.

## Habeas Corpus.

PETITIONER REMANDED.

*Clay & Davis* and *Don C. Carter* for petitioner.

(1) It devolves upon Mr. McCoy, who has petitioner in his custody under said writ, to show that his writ is legal. Ex parte Krieger, 7 Mo. App. 367. (2) It is axiomatic that jurisdiction cannot be conferred by estoppel. Tourville v. Railroad, 61 Mo. App. 527. However, if jurisdiction should be conferred by estoppel it would have to appear that the party estopped

was fully aware of the facts and of his legal rights in the premises. Frederick v. Railroad, 82 Mo. 402; Burke v. Adams, 80 Mo. 514; Garesche v. Insurance Co., 146 Mo. 452. (3) The commitment is illegal in that it does not set out the questions propounded to petitioner. In re Shull, 221 Mo. 623; R. S. 1909, sec. 2472. (4) If the questions propounded were not material and relevant to the allegations in the writ of attachment, petitioner was not guilty of contempt. Church on Habeas Corpus, secs. 319, 332.

*Perkins & Blair* and *Fred W. Kelsey* for J. H. McCall, Constable.

(1) The function of a habeas corpus in cases where persons are committed for contempt of court extends only to an inquiry into the jurisdiction of the court by whom the commitment was ordered, and into the validity of the process upon which confinement is based. Mullen v. People, 22 Am. St. Rep. 422 (note); In re Cooper, 32 Vt. 253; Robb v. McDonald, 29 Iowa 330; Ex parte Reed, 100 U. S. 13; People v. Cassels, 5 Hill (N. Y) 164; In re Bissell, 40 Mich. 63; Ex parte Goodin, 67 Mo. 637; Ex parte Sam, 51 Ala. 34; People v. Jacobs, 66 N. Y. 8; People v. Perfinbrink, 96 Ill. 68; Ex parte Maulsby, 13 Md. 625; In re Havlik, 45 Neb. 747; Ex parte Cohn, 55 Cal. 193; Ex parte Mason, 16 Mo. App. 41; Ex parte Terry, 128 U. S. 289; Ex parte Clark, 110 Cal. 405; Ex parte Milett, 37 Mo. App. 76; People v. Sheriff, 29 Barb. (N. Y.) 622; In re Rosenberg, 90 Wis. 581; In re Stokes, 5 S. C. 71; Williams Case, 67 Am Dec. 374; State v. Galloway & Ray, 98 Am. Dec. 404; Ex parte Sternes, 11 Am. St. Rep. 251. (2) It has been held that a party to a suit is a competent witness and may be called as a witness by his adversary, and stands precisely as any other witness in relation to that suit with the same rights and duties. Ex parte Priest, 76 Mo. 229. (3) These statutes are to be

liberally construed because they are remedial in their
character and are not in derogation of the common law
by creating a right which did not exist under the com-
mon law. Roselle v. Harmon, 103 Mo. 339; Heman v.
McNamara, 77 Mo. App. 1. (4) Attachments are not
dissolved by the terms of the Bankruptcy Act until af-
ter adjudication and then only for the purpose of in-
creasing the bankrupt estate so that all creditors may
share alike. In re Walsh Bros., 159 Fed. 960; Lowe
v. Hill, 96 Pac. 623. (5) The court cannot take judi-
cial notice of the pendency of bankruptcy proceedings.
5 Cyc. 258; Lumber Co. v. Harvester Company, 215
Mo. 221; In re Wells, 114 Fed. 222; Marble Co. v.
Grant, 135 Fed. 322; In re Kane, 152 Fed. 587; In re
Seebold, 105 Fed. 910. (6) All that is required in a
case of continuance by the notary public is that the con-
tinuance must be in good faith. In re Green, 86 Mo.
App. 216; Bowman v. Branson, 111 Mo. 343; Fox v.
Carlyle, 3 Mo. 197; Backen v. March, 4 Mo. 74.

GRAY, J.—On the 17th day of November, 1910,
a suit was pending in the circuit court of Jasper
county, in which the Conqueror Trust Company was
plaintiff and the petitioner herein and three others
were defendants. On that day the plaintiff in that suit
caused a notice to be served on the defendants, notify-
ing them that on the 22d day of November depositions
in behalf of plaintiff in said cause would be taken be-
fore H. B. Davidson, a justice of the peace in Galena
township, in said county. After the notice had been
served on all of the defendants, except the petitioner,
the justice issued a subpoena for him and delivered the
same to the respondent herein, who is the constable of
said township. On the 17th the constable subpoenaed
the petitioner, and at the same time served him with
a copy of the notice to take depositions. The constable
made his return showing that the notice and subpoena
had been duly delivered to the petitioner. On the 22d

the petitioner failed to appear in obedience to the subpoena. At the request of the plaintiff the justice issued an attachment for petitioner and delivered the same to the constable. On account of the failure of the witness to appear the justice adjourned the taking of the depositions until the next day, which was the 23d.

The notice to take depositions recited that the depositions would be taken between the hours of eight o'clock in the forenoon and six o'clock in the afternoon, and if not completed on the 22d, would be continued from day to day, at the same place, and between the same hours, until completed.

At the hour of two o'clock on the 23d the constable had been unable to find the witness, whereupon the justice made the following order:

"It appearing that the said A. W. Canada has not yet been found, it is therefore ordered that the cause be continued until Thursday, November 24, 1910, at the hour of ten o'clock a. m. unless the said A. W. Canada be sooner brought before me in obedience to the attachment issued in this cause."

On the same day and at the hour of eleven o'clock p. m., the constable, having found the witness, caused him to be taken before the justice in obedience to the writ of attachment. The attorneys for the plaintiff were present and asked the justice to swear the witness so his deposition could be taken. The witness was sworn to testify without making objections, whereupon the following proceedings were had. (Examination by Mr. Kelsey, plaintiff's attorney.)

"Q. Your name is A. W. Canada? A. I absolutely refuse, under the advice of my attorneys, to answer any and all questions.

"Q. On what grounds? A. What I said.

"Mr. Kelsey: I ask that the witness be committed to jail until he answers.

"The Justice: I will have to order you to answer. Mr. Canada. A. I refuse."

On account. of the refusal of the petitioner to answer the justice issued a commitment, by which the constable was directed to take the petitioner into custody and commit him to prison, there to remain without bail, until he would testify in the cause. At the same time the justice issued the commitment he made another order continuing the matter until the hour of ten o'clock a. m. of the 24th, at which time, the constable was directed to have the petitioner before the justice to give him an opportunity to testify. The petitioner was brought before the justice on the 24th, and he again refused to testify and he was, by the justice, remanded to the custody of the respondent herein, and the taking of the deposition continued to the 25th. On the 25th the petitioner was again taken to the justice's office and he again refused to testify.

On the 25th a writ of habeas corpus was issued by the circuit court of Jasper county directing the respondent to have the petitioner before the court on that day. Pursuant to that writ the respondent caused the petitioner to appear in said court. A hearing was had in that court, and the petitioner was remanded to the custody of the respondent until he complied with the judgment, under which he was held.

The record of the justice shows that, daily, from the 23d of November until this cause was heard in this court, on the 2d day of December, the petitioner was taken before the justice and an opportunity was given him to testify and he refused to do so.

On the 28th day of November the petitioner applied to one of the judges of this court for a writ of habeas corpus and the same was issued, returnable to the court in term, and the matter has been heard by the court.

It is the first claim .of petitioner that the justice was without authority to take his testimony as a wit-

ness for the reason that the subpoena for him was issued before he had been served with the notice to take depositions. Admitting for the purposes of this case, that the objection would be well taken in a case wherein there was only one defendant, but in the case in which petitioner was called upon to testify there were four defendants and three of whom had been served with the notice before the subpoena was issued. As to such defendants the justice was authorized to take depositions. [Millspaugh v. Railroad, 138 Mo. App. 31, 119 S. W. 993.]

Soon after the suit was commenced in the Jasper County Circuit Court against the petitioner and others a petition was filed in the Federal court to have the petitioner adjudged a bankrupt, and the petitioner alleges that the bankruptcy proceedings ousted the state court of jurisdiction of the cause, and further that the purpose of taking the deposition was to obtain evidence against him in the bankruptcy, and was not in good faith.

In no event could the filing of the petition, to have petitioner adjudged a bankrupt, stay the proceedings of the state court as to the other defendants, or the right of plaintiff to take depositions to be used against such other defendants.

If the petitioner, when called upon to obey the command of the state, had appeared before the justice, and when sworn, objected to answering questions, which he believed were not asked in good faith as directly affecting him as a party to the suit, on the ground that the subpoena was issued before he had been notified of the taking of the depositions he might have been justified. But it is not necessary for us to so hold as he refused to testify at all. As said by the court in Ex parte Button, 120 N. W. 203, "If it should be sought to perpetuate a wrong, or to abuse the process of the court, or the officer, for an unjustifiable purpose, we think the witness might lawfully refuse to answer; but

this question is not presented here, since the petitioner refused to be sworn or to testify at all.''

It is also contended that the notice stated that the depositions would be taken between eight o'clock in the forenoon and six o'clock in the afternoon and the justice was without authority to take depositions at eleven o'clock p. m. And further that the commitment does not set forth the questions asked of petitioner so that the court can determine therefrom whether the same were material.

It is held in the Shull case, 221 Mo. 623, 121 S. W. 10, that a commitment which does not set forth in detail the acts constituting the alleged contempt is fatally defective. Under that authority we hold the commitment in this case defective.

The authority of the justice to take depositions was limited to the time and place named in the notice. [In the Matter of Green, 126 Mo. App. 309, 103 S. W. 503.] The hours fixed in the notice were between eight o'clock in the forenoon and six o'clock in the afternoon, and when the justice attempted to take the deposition at eleven o'clock p. m., he was acting without authority. The order made during the proper hours on the 23d to adjourn the taking of the depositions until the 24th was the only legal order made on that day, and, therefore, it was the duty of the constable when he arrested the petitioner under the attachment to take him before the justice on the 24th.

The record of the justice shows that on the 24th the petitioner was brought before him by the constable, and that the petitioner refused to testify in the case and the justice ordered him into the custody of the constable, and continued the taking of depositions until the next day, when the petitioner was again brought before the justice and the same proceedings had. And each day since said time to the hearing in this court the petitioner was taken before the justice and given an opportunity to testify, and he has, on

every occasion refused to testify, and in so doing, has acted on the advice of his legal advisers.

We have held that the subpoena was lawfully issued and served and that it was the duty of the petitioner to appear in obedience thereto, and as it was his duty when taken before the justice on the 24th to testify he should have done so. But he refused to testify without any lawful excuse and his refusal from day to day to testify in the cause had been an open, persistent defiance of the law. [Re Clark, 28 L. R. A. 242.]

If the justice had attempted to compel him to answer any improper questions, sections 6404, Revised Statutes 1909 offered him full protection and at the costs of the party in whose behalf the improper questions were asked.

When the petitioner was taken before the justice on the 24th he was there not in obedience to the subpoena but by virtue of the attachment issued by the justice, and when the justice caused him to be brought before him on that writ his authority was not limited to imposing a fine for failure to obey the mandate of the subpoena, but he had the right to hold him until his testimony could be taken. [Ex parte Button, 120 N. W. 203.] The right to hold the prisoner when brought before the court on the writ of attachment until he testified is a power given to enforce the duty to appear and testify. [Re Clark, 28 L. R. A. 242.] If nothing more was shown than the commitment the petitioner would be entitled to his discharge, but the evidence shows that at the time the petitioner applied to the circuit court of Jasper county for writ of habeas corpus the justice was continuing the taking of the depositions from day to day to give him an opportunity to obey the laws of the commonwealth and appear and testify as it was his duty to do. And that the circuit court refused to discharge him but remanded him to the custody of the constable. The evidence further shows,

that after the proceedings in the circuit court, the justice continued to postpone the matter from day to day to give the petitioner an opportunity to testify, and that he had been given that opportunity every day since, and the same is still open to him unless the taking of the deposition had been abandoned since the cause was heard on the merits in this court.

When the justice on the 24th ordered the petitioner into the custody of the constable it was not necessary that any commitment be issued, as it was the order that gave the authority and not a commitment issued thereon. [Ex Parte O'Brien, 127 Mo. l. c. 488, 30 S. W. 158.] And until the taking of the deposition has been completed the proceeding is similar to the trial of a case in court. The witness is required to attend until discharged, and the petitioner, having been brought before the justice on the writ of attachment, was not entitled to his discharge, but the justice had the right to keep him in custody until he testified or until the taking of the deposition was completed. And by section 2472, Revised Statutes 1909, it is expressly provided that it shall be the duty of the court to forthwith remand the party if it shall appear "that the time during which such party may legally be detained had not expired."

The petitioner is deprived of his liberty for the sole reason that he unlawfully refuses to obey the law. He can have his liberty when he consents to respect the command of his state. In other words, he carries in his pocket the key to his cell, and if he does not enjoy the fullest freedom it is because he refuses to unlock his own cell. As said by the Supreme Court in Ex Parte Crenshaw, 80 Mo. l. c. 454. "The prisoner has no occasion in such a case to apply to the courts for his discharge. He has it in his power to obtain it by doing what he should and has power to do. If he should be released he would be in contempt of court."

We will remand the petitioner to the custody of the respondent with directions to take him before the justice and if the taking of the deposition has been abandoned to release him; otherwise, that his testimony may be obtained.   All concur.